# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 13-7006**　　　　　　　　　　　　　　　　**September Term, 2013**

FILED ON: FEBRUARY 12, 2014

CHARLES MOSELEY MARSHALL, JR., DOING BUSINESS AS PSYDA SOLUTIONS AND PSYDA SOLUTIONS,
　　　　　　　APPELLANTS

v.

JAMES ALLISON, THE SALVATION ARMY AND THE SALVATION ARMY,
　　　　　　　APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-02011)

———

Before: HENDERSON*, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Judges*

# **J U D G M E N T**

The cause came to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel. The court has afforded the issues full consideration and has determined they do not warrant a published opinion. *See* D.C. Cir. Rule 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the judgment of the District Court be affirmed.

Marshall appeals the district court's decision granting summary judgment for the defendants. We affirm the judgment of the district court.

The factual premise of the claims can be stated simply. Marshall endeavored to sell The Salvation Army ("TSA") services designed to facilitate donations to the organization. During the course of this enterprise, Marshall upset defendant Allison, a divisional leader with TSA, by writing in an email that "[f]ollowing a 12 month proof-of-concept, we'll roll out Territory-wide," thus suggesting that headquarters had approved

**No. 13-7006**
Page Two

the marketing program in a way that removed discretion from divisional leaders. Such a decision would have conflicted with the organization's general policy favoring decentralized decision-making. A short time later, the defendant and two other TSA employees met to discuss Marshall's marketing services. Marshall argues the defendant defamed him during this meeting by accusing him of (1) misrepresenting support from TSA headquarters, (2) providing monetary kickbacks to a TSA employee, (3) making unauthorized visits to local TSA commands, and (4) being "incompeten[t]" with respect to one of his marketing programs. Alleged statements to this effect form the basis of Marshall's defamation and tortious interference claims.

The district court ruled against the plaintiff on several grounds: that the statements did not satisfy the elements required for a showing of defamation; that even if they were defamatory, the statements were protected by the common interest privilege; and that the plaintiff had no contract or probable economic relationship with the TSA with which the defendant might interfere. We need not consider all of these grounds, as we agree with the district court that the statements, if said, were either not false or not defamatory in the relevant sense. Absent this foundation, neither the defamation nor the tortious interference claims can survive.

At the most basic level, a plaintiff must show that the defendant made a false and "defamatory" statement concerning the plaintiff to recover on claim for defamation. Under District of Columbia law, "[a] statement is 'defamatory' if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006) (quoting *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990)).

Consider the four accusations in turn. First, as indicated by the email that Marshall wrote to the defendant, a statement to the effect that Marshall overstated his support from headquarters is true and therefore not actionable. Marshall admits his email was poorly worded, and should have said "'[w]e hope to' rather than 'we'll' as though it was a foregone conclusion." Marshall Narrative at 16. Along these same lines, Marshall acknowledges an indirect overstatement of support in the form of "often mention[ing]" the name of Dean Feener, a TSA employee and the son of a high-ranking TSA official, in the course of marketing his services. Second, as the district court explained, Allison did not say that Marshall was paying kickbacks; instead, in the words of the person supposedly receiving such payments, the term "kickbacks," if used at all, was merely a way in which Major Allison "caution[ed]" the supposed recipient about boosting Marshall so much as to create an "appearance of receiving something" in exchange. Feener Decl. ¶ 13. Third, the record is not clear whether the defendant accused Marshall of making unauthorized visits to local TSA offices, but this ambiguity is of no moment as such a statement, even if "negative," does not rise to the level of defamation. To reach that level, under District of Columbia law, a statement must "be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984) (citation omitted). A statement that a vendor is making unauthorized visits to possible purchasers cannot be so characterized. The lightness of the supposed offense, and therefore of the accusation as

2

No. 13-7006
Page Three

well, is evident in the fact that the defendant Allison declared that Marshall "was never precluded from visiting any [local offices] he wished to," Allison Decl. ¶ 15, an assertion corroborated by another TSA employee involved in this affair, Sears Decl. ¶ 15, and not disputed by plaintiff.  Fourth, there is no admissible evidence indicating that the defendant accused Marshall of incompetence.  The most that can be said is that the defendant, as a potential buyer, questioned the soundness of the products and services that Marshall was selling.  E.g., Sears Decl. ¶ 14.  Such statements do not approach defamatory status.

Plainly enough, the absence of any defamatory statement is fatal to a defamation claim.  As these same supposedly defamatory statements serve as the foundation for the tortious interference claim, the foregoing is equally fatal to that claim.

Pursuant to Rule 36 of this Court, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or petition for rehearing *en banc*.  See FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:   /s/
Jennifer M. Clark
Deputy Clerk

* Judge Henderson would affirm the district court on the ground that any defamatory statement, if made, is protected by the common interest privilege.  *See Moss v. Stockard*, 580 A.2d 1011, 1023-24 (D.C. 1990).